IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|                                        |     |                               |
|----------------------------------------|-----|-------------------------------|
| **SHERON D. THOMAS**                   | )   |                               |
|                                        | )   |                               |
| **Plaintiff,**                         | )   |                               |
|                                        | )   |                               |
| **v.**                                 | )   | **Civil Action No. CBD-11-2960** |
|                                        | )   |                               |
| **MICHAEL J. ASTRUE,**                 | )   |                               |
| **Commissioner, Social Security**      | )   |                               |
| **Administration,**                    | )   |                               |
|                                        | )   |                               |
| **Defendant.**                         | )   |                               |
|                                        | )   |                               |

## MEMORANDUM OPINION

Sheron D. Thomas, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Social Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and Commissioner's Motion for Summary Judgment ("Commissioner's Motion").  The Court has reviewed these motions and the applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and DENIES Commissioner's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on June 22, 2006.  R. 175, 177-78.  The Commissioner denied Plaintiff's claim on first review on March 16, 2007, R. 180-82, and on reconsideration on September 11, 2007, R. 186-87.  On October 15, 2007, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), R. 190, and a video hearing was held on March 23, 2009, R. 130.  On May 28, 2009, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act from May 3, 2006 through the date of the decision.  R. 106-29.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520 (2009), and further explained below.  *See*, *infra*, Standard of Review.  At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 3, 2006, the alleged onset date.  R. 108.  At the second step, the ALJ determined that Plaintiff has severe impairments, including cervical degenerative disc disease, lumbar degenerative disc disease with lumbar radiculopathy, migraine headaches, osteoarthritis of the knee, and fibromyalgia.  R. 109.  The ALJ determined that Plaintiff's depression did not qualify as a severe impairment.  R. 116-18.  At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  R. 118-20.  At the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to perform simple, unskilled sedentary work, except that "she could lift 10 pounds occasionally, less than 10 pounds frequently, occasionally climbing a ramp or stairs, balancing, stooping, kneeling, crouching and crawling but never climbing a ladder or scaffold, and avoiding overhead work." R. 120.  Nonetheless, the ALJ determined that Plaintiff was unable to perform any past relevant

work.  R. 127.  At the fifth step, the ALJ determined that considering Plaintiff's residual

functional capacity, age, education, and work experience, "there are jobs that exist in significant

numbers in the national economy that the claimant can perform."  R. 128.  As a result, the ALJ

concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act,

from May 3, 2006 through the date of this decision."  R. 129.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.  R.

100.  The Appeals Council denied Plaintiff's request on August 19, 2011, making the ALJ's

decision final and appealable.  R. 1-4.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court must

affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of

Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011);  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial evidence is "more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted);

*see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a

mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence

to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345.  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456.  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2009).  The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

    1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is doing such activity, she is not disabled.

    2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If she does not have such impairment or combination of impairments, she is not disabled.

    3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and

Defendant has the burden to prove that Plaintiff is not disabled at step five.  *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## <u>ANALYSIS</u>

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or

remand the case for additional consideration and evaluation of Plaintiff's condition, Pl.'s Br. 15,

for the following four reasons:

1) The ALJ improperly formulated the hypothetical question to the vocational expert, and therefore lacked substantial evidence for the conclusion that Plaintiff can perform other work in the national economy;

2) The ALJ lacked substantial evidence for the conclusion that Plaintiff does not meet Listing 1.04 for disorders of the spine;

3) The ALJ erred in determining that Plaintiff's allegations of pain were in excess of what would normally be expected by the medical evidence; and,

4) The ALJ erred in finding that Plaintiff's depression was not a severe impairment.

For the reasons set forth below, the decision of the ALJ is affirmed in part and denied in

part, and this case is remanded for further proceedings.

**I.  The ALJ Improperly Weighed The Medical Opinion Evidence In Determining Plaintiff's Residual Functional Capacity.**

Plaintiff challenges the ALJ's conclusion that she could perform work existing in the national economy by arguing that the hypothetical question the ALJ posed to the vocational expert was flawed.  Pl.'s Br. 9-11.  The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the residual functional capacity to meet the demands of past relevant work or adjust to other existing work.  20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2009).  The vocational expert may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)."  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence."  *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).

During the testimony of the vocational expert, the ALJ posed the following question:

> Now if we consider a hypothetical person who is about the
> claimant's stated age at onset, that would be 46 years.  This
> individual has a high school education, is able to read, write, and
> do at least simple math, such as adding and subtracting.  This
> individual has certain underlying impairments that place
> limitations on the ability to do work-related activities.  We'll start
> with a sedentary level of exertion.  In this hypothetical, postural
> are all occasional, but there should be no climbing of a ladder, rope
> or a scaffold.  This person should also avoid working overhead.
> And although this person has a semi-skilled work background,
> non-exertional limitation would be simple, unskilled work. . . .
> Would there be any simple unskilled work such a person could do

in the national or regional economy, that would fit within the
parameters of the hypothetical?

R. 165-66.

Plaintiff first claims that the ALJ erred by failing to consider all of the evidence in the
record, particularly the evidence of her two neck fusion surgeries which occurred on May 8,
2007, and October 28, 2008.  Pl.'s Br. 9-10; R. 452, 735.  Plaintiff argues that the hypothetical
failed to adequately describe her condition because it relied on the opinions of Dr. William
Barrish (a non-treating state-agency consultative examiner) and Dr. William Hakkarinen (a non-
examining state-agency consultant), both of which predated the surgeries.  Pl.'s Br. 9-10.
However, while formulating Plaintiff's functional limitations the ALJ relied on all of the medical
evidence in the record, including that which post-dated her neck surgeries.  R. 120-27.  For
example, the ALJ discussed the post-operative reports and assessments of her treating physicians
Dr. Benjamin Knox and Dr. Stephen Rualo.  R. 122, 125.  Therefore, there is no basis to
Plaintiff's claim that the ALJ merely "assum[ed]" the functional capacity assessments of Dr.
Hakkarinen and Dr. Barrish.  Pl.'s Br. 9.

Plaintiff's underlying argument is not that the hypothetical was flawed, but that the ALJ
lacked substantial evidence for the conclusion that she retained the residual functional capacity
to perform a limited range of sedentary work.  Pl.'s Br. 9-10.  *See Wells v. Chater*, No. 94-2186,
1995 WL 417685, at *3 (4th Cir. July 7, 1995).  Plaintiff alleges that the ALJ improperly
weighed the medical opinion evidence in reaching this conclusion.  Pl.'s Br. 9-11.  To determine
the weight assigned to medical opinions, the Commissioner considers six factors:  (1) the
examining relationship between the source and the claimant; (2) the length, nature, and extent of
the treatment relationship between the source and the claimant; (3) the supportability of the
source's opinions; (4) the consistency of the source's opinions with the record as a whole; (5)

any specialized expertise of the source; and (6) other factors which the claimant may bring to the Commissioner's attention.  20 C.F.R. §§ 404.1527(d), 416.927(d) (2009).  The regulations state a preference for medical sources who have a treatment relationship with the claimant, because they are "most able to provide a detailed, longitudinal picture" and "may bring a unique perspective to the medical evidence."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When the adjudicator does not give controlling weight to a treating source, that decision must be justified in the notice of decision by an application of the factors listed above.  *Id.*  For medical sources who have not examined or treated the claimant, the adjudicator must assign weight depending on the degree to which they provide supporting explanations for their opinions.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Plaintiff correctly asserts flaws in the ALJ's weighing of the treating and non-treating medical sources.  First, the ALJ assigned little weight to the opinion of Plaintiff's treating physician, Dr. Rualo.  R. 125.  The ALJ reasoned that his opinions were "inconsistent with the record" and that his "lack of expertise in vocational training and occupational health coupled with his specialty in general medicine have not provided a balanced review of claimant's limitations."  R. 125.  Critically, the ALJ assigned little weight to Dr. Rualo's opinion that Plaintiff could sit for only four hours of an eight-hour work day.  R. 711.  This position conflicted with the opinion of Dr. Barrish as well as those of the non-examining state agency consultants Dr. Hakkarinen and Dr. Joyce Goldsmith, each of whom concluded that Plaintiff could sit for six to eight hours.  R. 356, 409, 435.  The ALJ's resolution of this factual dispute was dispositive to the outcome, because in order to perform sedentary work a claimant must be able to sit for about six hours of an eight hour work day.  SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).  Further, the vocational expert testified that Plaintiff would have to be able to

work a minimum of six and a half hours per day to perform the jobs he identified as existing in the national economy.  R. 170.  If Plaintiff is in fact unable to perform sedentary work, then there would be no work Plaintiff could perform in the national economy.  *See* 20 C.F.R. §§ 404.1567, 416.967; R. 166-70.

The ALJ did not explain the decision to reject the opinion of Dr. Rualo to the extent that the regulations require when giving less than controlling weight to a treating physician.  *See* 20 C.F.R. § 404.1527(d)(2); *Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) ("If the ALJ does not give the treating physician's opinion controlling weight, she must give good reasons in her notice of determination or decision for the weight she gives the treating source's opinion.") (internal quotation marks omitted).  The ALJ failed to discuss the extent, length, or frequency of treatment of Plaintiff's treatment relationship with Dr. Rualo.  *See* R. 125-26.  The ALJ also misapplied the specialization factor in assigning comparatively less weight to Dr. Rualo's opinion than that of the other physicians.  R. 125.  The regulations state that the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d)(5).  Neither the ALJ's opinion nor the record indicates that Drs. Barrish, Goldsmith, or Hakkarinen are specialists in orthopedics.  Therefore, it was improper to assign less weight to Dr. Rualo for being a general practitioner.  *See Pusey v. Astrue*, No. SKG-09-3410, 2011 WL 666046, at *7 (D. Md. Feb. 14, 2011) ("The Court has found no precedent that a general physician's opinion, without more, should be accorded little weight because he lacks a specialty in a given field.").  In addition, the ALJ's statement that Dr. Rualo's assessment is inconsistent with the record was merely conclusory, lacking in factual comparisons.  R. 126-27.  See *Pusey,* 2011 WL 666046, at *6.  Finally, the ALJ improperly

concluded that Dr. Rualo's findings were opinions regarding disabled status which are reserved

to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Dr. Rualo's report did not contain

a conclusion of disability or of Plaintiff's residual functional capacity, but rather consisted in his

assessments of Plaintiff's limitations in sitting, standing, and other areas.  R. 771.  These

opinions of Dr. Rualo cannot be discounted as determinations of disability reserved to the

Commissioner.  *See Battle v. Astrue*, No. PWG-09-3281, 2011 WL 4048525, at *1 (D. Md. Sept.

8, 2011) ("[T]he ALJ must still evaluate all of the evidence in the case record to determine the

extent to which the physician's opinion is supported by the record as a whole.").

Second, the ALJ failed to appropriately weigh the opinion of the non-examining state-

agency consultant Dr. Hakkarinen.  The regulations specifically require that an adjudicator is to

assess whether non- examining sources "provide supporting explanations for their opinions" and

"consider all the pertinent evidence . . . including opinions of treating and other examining

sources."  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  The ALJ assigned greater weight to Dr.

Hakkarinen, because he "did have access to the claimant's treatment records as well as Dr.

Barrish's report."  R. 126.  However, Dr. Hakkarinen's report does not cite to a single record or

report in the file, making it impossible to determine how he reached his conclusions and whether

he in fact reviewed all of the pertinent evidence.  R. 434-41.  *See Dean v. Astrue*, No.SKG-09-

007, 2010 WL 2464969, at *13 (D. Md. June 11, 2010) (remanding where non-examining

physicians "did not note whether they reviewed any or which of plaintiff's medical records").

The ALJ therefore lacked substantial evidence for the conclusion that Dr. Hakkarinen's opinions

were well supported and deserving of great weight.

Third, the ALJ failed to properly weigh the evidence provided by another non-examining

state-agency consultant, Dr. Goldsmith.  In assigning great weight to the opinion of Dr.

Goldsmith, the ALJ merely recites her conclusions and concludes that they are "consistent with the medical record as a whole." R. 127. The ALJ's opinion is devoid of any discussion of the supportability of Dr. Goldsmith's conclusions or any of the other factors required by the regulations. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

This case must be remanded so that the ALJ can properly weigh the opinions of Drs. Rualo, Hakkarinen, and Goldsmith in order to resolve the dispute about the amount of time Plaintiff is capable of sitting in an eight-hour workday. If Dr. Rualo's treating opinion that Plaintiff can sit for only four hours is to be discounted in favor of the opinions of non-treating and non-examining sources, the ALJ must give a more complete rationale. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Pusey,* 2011 WL 666046, at *7; *Dean* 2010 WL 2464969, at *13.

## II.  Substantial Evidence Supports The ALJ's Other Conclusions Regarding Plaintiff's Residual Functional Capacity.

Plaintiff challenges three additional conclusions that the ALJ reached while assessing her residual functional capacity. First, Plaintiff asserts that the ALJ erred by assigning little weight to the opinion of the state-agency consultative examiner Dr. Barrish regarding her postural limitations. Pl.'s Br. 11. Plaintiff suggests that Dr. Barrish's statement that she "should avoid" bending, crawling, crouching, and stooping necessitated a finding that she should never perform these activities. *Id.* However, here the ALJ properly weighed Dr. Barrish's opinion, noting that he was unable to review Plaintiff's May 2006 MRI and instead relied on her own statements about her condition. R. 126. As the ALJ observed, the conclusion that these activities "should be avoided" is ambiguous as to whether Plaintiff could engage in them occasionally or never, especially since Dr. Barrish stated that "this may improve with further conservative treatment." R. 126, 356-57. Further, the postural limitations assigned by the ALJ were the same as those

provided by Plaintiff's treating physician Dr. Rualo.  R. 771.  Therefore, the ALJ's adoption of the postural limitations assigned by Dr. Barrish was supported by substantial evidence.

Second, Plaintiff argues that it was error not to include the opinion of Dr. Barrish that she requires "frequent position changes" while sitting when the ALJ posed the hypothetical question to the vocational expert.  Pl.'s Br. 11-12, R. 356.  Plaintiff relies on Social Security Regulation 96-9p to assert that the range of sedentary work would be further eroded by this limitation.  Pl.'s Br. 11-12.  However, this ruling refers to alternating sitting and standing, not to changing positions while sitting.  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  Plaintiff provides no evidence that having to change positions while sitting further restricts her functional capacity.

Third, Plaintiff argues that the functional capacity assessment of Dr. Goldsmith does not support the conclusion that she can do sedentary work on a "regular and continuing basis," or for an eight-hour work day.  Pl.'s Br. 10; s*ee* SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).  Plaintiff claims that Dr. Goldsmith's opinion that Plaintiff could stand or walk for one to two hours and sit for about six hours adds up to less than eight hours.  Pl.'s Br. 10; R. 409.  However, residual functional capacity is the *most* a claimant can do despite her limitations, and Dr. Goldsmith's assessment is therefore consistent with the ability to do sedentary work.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2009); SSR 96-8P, 1996 WL 374184, at * 1.

### III.  Substantial Evidence Supports The ALJ's Conclusion That Plaintiff Does Not Meet The Listing For Disorders of the Spine.

Plaintiff alleges that the ALJ failed to consider medical evidence which would qualify her under the Listings of Impairments published in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009) ("the Listings").  Pl.'s Br. 12-13.  Plaintiff claims that she qualifies for Listing 1.04:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise

of a nerve root (including the cauda equina) or the spinal cord.
With:

    A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

    B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

    C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Each of the above listings requires the claimant to establish a disorder with a co-occurring loss of function.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Diagnosis of the disorder must be supported by findings from medically acceptable imaging procedures (such as x-ray or MRI) and abnormal findings should be confirmed by alternative testing methods.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(C)-(D).

      Loss of function is defined by the Listings as the inability to ambulate effectively or the inability to perform fine and gross motor movements effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a).  "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §

13

1.00(B)(2)(b)(1).  Effective ambulation is characterized by the ability to carry out activities of daily living and to travel without the assistance of a companion, while examples of ineffective ambulation include the inability to walk without two crutches or canes and the inability to shop or climb steps.  *Id.*

Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet the requirements of Listing 1.04.  Listing 1.04A requires evidence of nerve root compression, which much of the medical evidence suggests that Plaintiff lacked.  The ALJ cited an MRI conducted on May 11, 2006, on the lumbar spine, which found that Plaintiff's small disc protrusion was not "impinging on any of the descending nerve roots," and that the rest of her spinal canal was "unremarkable."  R. 119, 301.  A second doctor reviewing the same MRI found no "major stenosis or nerve root irritation."[1]  R. 376.  A September 27, 2007 MRI of Plaintiff's cervical spine conducted after her first fusion surgery found no nerve compression.  R. 501.  A CAT scan of the cervical spine on September 25, 2008, found only mild stenosis and "did not indicate any central or foraminal stenosis worthy of decompression."  R. 719, 735.  A lumbar MRI conducted in February of 2009 after Plaintiff's second fusion surgery showed no nerve root impingement, but just "some mild disc degeneration, normal for her age."  R. 765, 800.

Even if Plaintiff had established nerve root impingement, there is substantial evidence that she fails to meet the functional limitations required by Listing 1.04A.  Plaintiff has not asserted, and the record does not contain, any evidence of the motor loss and reflex loss required by the Listing.  Plaintiff's doctors have consistently observed her as having full motor strength, R. 356, 377, 427, 443, 445, 449, 766; and mostly normal reflexes, R. 356, 377, 427, 443, 445,

---

[1] Spinal stenosis is the narrowing of the spinal canal, which puts pressure on the spinal cord or sciatic nerves.  Mayo Clinic, Diseases and Conditions, Spinal Stenosis, http://www.mayoclinic.com/health/spinal-stenosis/DS00515 (last visited October 19, 2012).

449, 766.  The Listings require positive leg-raising tests both "sitting and supine," while Plaintiff has had a mix of positive and negative results.  R. 46, 356, 427.

Plaintiff asserts that she meets Listing 1.04A because she had a positive Spurling's sign and two neck surgeries.  Pl.'s Br, 12-13.  A Spurling's sign is a test for cervical nerve root impingement in which the examiner applies force to the patient's head.  Stedman's Medical Dictionary (2006), *available at* http://www.medilexicon.com/medicaldictionary.php.  The test is positive when the patient reports feeling radiating pain.  *Id*.  Although Plaintiff had two positive Spurling's tests, R. 449, 526, there is nonetheless substantial evidence from before and after the neck surgeries supporting the ALJ's decision.

Plaintiff also argues that the ALJ failed to consider her need to change positions frequently when concluding that she does not meet Listing 1.04B.  Pl.'s Br. 13.  However, Listing 1.04B requires evidence of spinal arachnoiditis, which as the ALJ noted is completely absent from the record.  R. 120.  Therefore, the ALJ's failure to discuss the need to change positions is immaterial.

Plaintiff does not specify any alleged error in the ALJ's conclusion that she does not meet Listing 1.04C.  However, the ALJ's decision is supported by substantial medical evidence showing no stenosis of Plaintiff's lumbar spine, R. 301, 376, 501, 765, 766, 800; as well as by evidence that Plaintiff is able to ambulate effectively enough to carry out her daily activities such as maintaining personal hygiene, preparing simple meals, doing housework, and driving to the bank, grocery store, or doctor.  R. 159-60, 351, 413.

Finally, Plaintiff argues that the ALJ failed to consider her obesity when assessing whether she met the Listings.  The Listings require the Commissioner to consider the cumulative effects of obesity on a claimant's impairments at all steps of the adjudicative process.  20 C.F.R.

Pt. 404, Subpt. P, App. 1, § 1.00(Q); *see also* SSR 02-1p, 2000 WL 628049, at *5 (Sept. 12, 2002) ("We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing."). However, it is within the discretion of the ALJ to seek additional information regarding obesity when there is no diagnosis of obesity in the record. *See Magaha v. Astrue*, No. CBD-09-1624, 2011 WL 4072571, *3 (D. Md. Sept. 12, 2011); SSR 02-1p, 2000 WL 628049, at *3 ("When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity."). While there is a correlation between BMI and obesity, this is not always the case because the weight may come from body fat or muscle. SSR 02-1p, 2000 WL 628049, at *2; *see also Magaha*, 2011 WL 4072571 at *3 ("BMI values alone are not determinative. It is possible for a person to have a BMI of 30 or above but be of a more muscular build and, therefore, not obese."). Therefore, the Commissioner will "generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height." SSR 02-1p, 2000 WL 628049, at *3.

Here, the medical record contains neither a diagnosis of obesity nor any documentation of concern on the part of Plaintiff's treating physicians regarding her body weight. Plaintiff asserts that obesity should have been considered because her body-mass index (BMI) has been "consistently above 30."[2] Pl.'s Br. 13. Even if this were the case, the ALJ had the discretion whether or not to seek additional medical evidence of obesity because of the absence of a

---

[2] The Clinical Guidelines of the National Institute of Health consider a BMI of thirty to be the lowest level of obesity, while a BMI of 25-29.9 is "overweight." SSR 02-1p, 2000 WL 628049, at *2. The record does not support Plaintiff's assertion that her BMI was consistently over thirty, but rather shows that it fluctuated above and below thirty throughout the relevant period. *See* R. 355 (25.6 on November 14, 2006), R. 420 (30.0 on January 25, 2007), R. 443 (28.1 on April 9, 2007), R. 514 (29.2 on December 7, 2007), R. 666 (27.5 on May 13, 2008), R. 703 (32.9 on September 19, 2008).

medical diagnosis in the record.  The ALJ's decision not to do so does not warrant remand.

## IV.  The ALJ Incorrectly Applied The Standard For Evaluating Plaintiff's Pain.

Plaintiff claims that that the ALJ made a "wholly unsupported medical determination" that her pain was in excess of what normally would be expected from the medical evidence. Pl.'s Br. 13.  When evaluating a claimant's reports of pain, the Commissioner must follow a two-step process.  20 C.F.R. §§ 404.1529, 416.929 (2009); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  At step one, the adjudicator considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain alleged.  20 C.F.R. §§ 404.1529(b), 416.929(b).  At step two, the adjudicator must evaluate the intensity and persistence of the pain, and determine the extent to which they limit the capacity for work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  The adjudicator will review the entire record, including medical and laboratory findings, the claimant's own statements, and any information provided by treating and non-treating medical sources.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2.  Once the adjudicator finds the first step has been satisfied, the claimant may rely entirely on subjective evidence of pain, and such evidence should not be rejected for the sole reason that it is not substantiated by objective medical evidence.  *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p, 1996 WL 374186, at *2.  This rule recognizes that pain is a highly subjective phenomenon and is not readily susceptible to objective proof.  *Hines*, 453 F.3d at 564-65.

Here, Plaintiff's main assertion is that her two neck fusion surgeries rendered it an abuse of discretion for the ALJ to assign less credibility to her subjective reports of pain.  Pl.'s Br. 13-14.  Plaintiff's reasoning is misguided – there is no one-size-fits-all method for determining the

level of pain or limitation produced by a particular surgery or procedure.  It is precisely because

of the variations in pain perception that the regulations require the adjudicator to review the

entire record when assessing the claimant's symptoms.  However, remand is nonetheless

necessary because the ALJ did not correctly apply the two-step standard for evaluating Plaintiff's

pain.

      The ALJ appeared to summarily dispense with the first step of the process by recognizing

that Plaintiff suffered from severe impairments which could reasonably be expected to produce

"some symptomology."  R. 121.  As appropriate at step two, the ALJ went on to review the

record, including Plaintiff's own subjective statements from her hearing testimony.  R. 122.  The

ALJ also considered opinions from Plaintiff's medical sources, such as physicians' assessments

of her MRI reports and observations regarding her pain.  R. 122.  The ALJ appropriately

considered the inconsistencies in Plaintiff's statements and the rest of the objective evidence.  R.

122.  *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

      However, the ALJ made an error of law by ultimately concluding that "objective

evidence fails to document the presence of any impairment or combination of impairments that

could reasonably be expected to result in pain or other symptoms of such severity or frequency

as to preclude the claimant's residual functional capacity as assigned."  R. 122.  This statement

by the ALJ conflates steps one and two in such a way as to preclude the Court from determining

whether the correct procedure was followed.  The language "impairments that could reasonably

be expected to result in pain" suggests that the ALJ sought to dispose of Plaintiff's complaints at

step one, despite previously having suggested otherwise.  R. 121-22; *see* 20 C.F.R. §§

404.1529(b), 416.929(b).  However, at step one the ALJ is limited to a determination of whether

the impairment could reasonably produce the symptoms alleged, and is prohibited from making a

determination as to the "intensity, persistence, or functionally limiting effects" of those symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b) (2009); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  If the ALJ's conclusion was in fact reached at step one, then it was error to assess the severity of Plaintiff's pain and the degree to which it limits her functional capacity.  *See* R. 122.

On the other hand, if the ALJ reached the above conclusion at step two, it was error to dismiss Plaintiff's claims of pain-related limitations because the "objective evidence fails to document" her level of pain.  R. 122; s*ee Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006) ("Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.").  Once reaching step two, the ALJ is required to review the objective *and subjective* evidence in the entire record, considering factors including the claimant's daily activities, the duration of pain symptoms, precipitating and aggravating factors, the effectiveness and side effects of any medications, other treatments, and measures taken to alleviate pain.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2009).  The ALJ's review of Plaintiff's subjective self-reports of pain was limited to the testimony at the hearing, and the conclusion reached raises a concern that these self-reports were improperly rejected outright because of a lack of objective documentation.  R. 122.  The ALJ is not prohibited at step two from relying on the objective medical evidence to evaluate the intensity and persistence of Plaintiff's pain and functional limitations; however, the ALJ may not reject subjective reports of pain solely because objective documentation is lacking.  *See Hines*, 453 F.3d at 565 n.3.  The misstatement of law in the ALJ's conclusion as well as the failure to apply the factors required by the regulations necessitates remand to ensure that the two-step process is correctly applied.

## V.  Substantial Evidence Supports The ALJ's Conclusion That Plaintiff's Depression Is Non-Severe.

Plaintiff argues that the ALJ erred in concluding that her depression was not a severe mental impairment.  In order to satisfy step two of the disability determination process, the claimant must have a severe medically determinable impairment that meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2009).  The duration requirement is that the impairment must have lasted or be expected to last for a continuous period of at least twelve months, unless it is expected to result in death.  20 C.F.R. §§ 404.1509, 416.909.  A medical impairment is non-severe if it does not significantly limit the claimant's ability to do basic work activities, including understanding, carrying out instructions, using judgment, responding appropriately to supervisors, and dealing with changes in routine.  20 C.F.R. §§ 404.1521, 416.921; *see also* SSR-85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (non-severity is found when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

The Commissioner uses a special technique for evaluating mental impairments by rating the degree of functional limitation they cause.  20 C.F.R. §§ 404.1520a, 916.920a.  This technique assesses four broad functional areas (known as the "paragraph B" criteria) on a five-point scale: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *Id.*, *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).  When a claimant has multiple impairments, the adjudicator must evaluate their combined effect on the person's inability to function, as opposed to assessing each impairment as if it existed alone.  20 C.F.R. §§ 404.1523, 416.923; SSR-85-28, 1985 WL 56856, at *3.

Plaintiff asserts that the ALJ improperly evaluated her mental impairment, particularly by finding that "[n]othing in the medical record points to a conclusion that with treatment and medication adjustments that the claimant's depression will not improve." Pl.'s Br. 14; R. 118. Plaintiff suggests that the ALJ operated in an adversarial nature by "assuming" that her condition would improve.[3] Pl.'s Br. 14. However, there is nothing in the record to suggest that the ALJ operated in an adversarial nature. Rather, the ALJ's conclusion is supported by the medical evidence and clinical findings regarding Plaintiff's depression. The ALJ noted that Plaintiff's depression did not satisfy the duration requirement, because she had only begun treatment in October of 2008 and her treatment records suggest that her symptoms were mild to moderate and responded well to medication. R. 116, 733, 742, 751, 790. Plaintiff's Global Assessment of Functioning scores as assessed by her mental-health practitioners were in the mild-symptomology range in December of 2008 and in the moderate range in February of 2009.[4] R. 754, 761. In a December 2008 mental health evaluation, Plaintiff rated her own happiness as an eight out of ten and her depression as a two out of ten. R. 751.

Substantial evidence also supports the ALJ's evaluation of the "paragraph B" criteria for assessing the severity of her depression. The ALJ concluded that claimant has only mild limitations in her activities of daily living and social functioning. R. 116. This finding is supported by Plaintiff's own hearing testimony that she can maintain her hygiene, cook with assistance, do some chores, drive to the doctor or grocery store, and manage her finances. R. 159-61. Plaintiff also testified that she is sometimes able to go to family functions and goes to

---

[3] Plaintiff further asserts that "[i]f this standard were followed then it would be impossible for anyone to be granted disability." Pl.'s Br. 14. Plaintiff fails to recognize that to determine the severity of an impairment, the adjudicator must assess whether the condition is expected to continue for twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909. Therefore, it was appropriate for the ALJ to evaluate whether the condition was likely to improve based on the evidence in the record.

[4] The Global Assessment of Functioning Scale is explained in the American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 34 (4th ed. Text Revision 2000).

church about once a week.  R. 161.  The ALJ's finding that Plaintiff has only mild limitation in

the areas of concentration, persistence, and pace is supported by the hearing testimony as well as

the treatment notes.  R. 153-54, 160, 741, 763.  There is also substantial evidence that Plaintiff

can follow and understand workplace instructions.  R. 281, 762.  The ALJ appropriately assigned

less weight to the opinion of Plaintiff's therapist Ms. Truitt, which was that Plaintiff had "poor to

none" ability to deal with work stressors and maintain concentration and attention.  R. 117.  The

ALJ noted that Ms. Truitt, a licensed clinical social worker, is not an acceptable medical source.

R. 118; *see* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2009).  The ALJ properly found that her

assessment was neither consistent with her prior treatment notes nor adequately explained by

clinical evidence.  R. 118, 741, 762-63; *see* 20 C.F.R. §§  404.1513(d), 416.913(d); SSR 06-03p,

2006 WL 2329939, *4-5 (Aug. 9, 2006) (enumerating factors for weighing opinion evidence by

sources other than acceptable medical sources).  As the ALJ noted, there is no evidence in the

record that the Plaintiff experienced any episodes of decompensation.  R. 117.  Finally, the ALJ

sufficiently considered the combined effect of Plaintiff's multiple impairments on her ability to

function.  *See Thomas v. Astrue*, No. WGC-10-1528, 2011 WL 1557911, at *10 (D. Md. Apr. 21,

2011) (finding adequate consideration of multiple impairments where ALJ relied on a residual

functional capacity assessment incorporating the combined effects of Plaintiff's limitations);

*Jones v. Astrue*, No. JKS-09-583, 2011 WL 826329, at *3 (D. Md. Mar. 7, 2011) (same).

For the foregoing reasons, there was substantial evidence to support the ALJ's conclusion

that Plaintiff's depression was of insufficient duration and produced only mild limitations, and

therefore was non-severe.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES

Commissioner's Motion and REMANDS this matter to the Social Security Administration for

further proceedings consistent with this opinion.


October 26, 2012                                         _____/s/_____

                                                        Charles B. Day
                                                        United States Magistrate Judge

CBD/ISA